ACCEPTED
07-15-00406-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
11/2/2015 10:14:25 PM
Vivian Long, Clerk

# APPELLATE CASE 07 15 406 CV BRIEF
# 11/02/2015 9:00 PM Monday

BRIEF FOR APPELLATE CASE NO 07 - 15 - 00406 – CV

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
11/2/2015 10:14:25 PM

VIVIAN LONG
CLERK

IN THE 7th COURT OF CIVIL APPEALS

CITY OF AMARILLO

COUNTY OF POTTER

STATE OF TEXAS

UNITED STATES OF AMERICA

FREDERICK WIEGAND JR., APPELLANT

V.

FREDRICA WIEGAND KINNARD, ET AL, APPELLEES


Original proceeding from the 421st and 22d

state district courts

In the city of Lockhart, county of Caldwell, state of Texas

The Honorable R. Bruce Boyer, presiding 22d Court

The Honorable Todd Blomerth, presiding 421st Court

APPELLANT'S BRIEF ON THE MERITS

ORAL ARGUMENT REQUESTED

**Frederick Wiegand Jr., Pro Se Litigant**      fredww2000@yahoo.com
**US Post Office Box 420461**      **Telephone 512 938 7045**
**1300 Matamoros St.**
**Laredo, TX 78042**

IDENTITY  OF  PARTIES  AND  COUNSEL

| Appellant / Plaintiff | Counsel: |
|---|---|
| Frederick  Wiegand Jr. | non yet, pro se to be timely |
| fredww2000@yahoo.com | Tel.  512  938  7045 |

Respondents

The Honorable  R.  Bruce  Boyer, presiding 22d Court
The Honorable Todd Blomerth, presiding 42st Court
1703  South Colorado St., Box 3
Lockhart, TX 78644
Tel.  512 398 1806

| Appellees / Defendants | Counsel: |
|---|---|
| | |
| Fredrica Wiegand  Kinnard, sister | Cliff  McCormack |
| Cassandra Carpenter Dillaveau, neice | 174 South Guadalupe St., #106 |
| Steve Kinnard, deceased husband | San Marcos, TX 78666 |
| | Tel.  512 353 3803 |
| | Email: |

## TABLE  OF  CONTENTS

1.  Front  Page . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

2. Identities  of  parties  and  counsel . . . . . . . . . . . . . . . . . . . . . .   2

3. Table  of  contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

4. Time  Table – Dates Management  . . . . . . . . . . . . . . . . .   4

5. Table  of  authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6. Statement  of  the  case . . . . . . . . . . . . . . . . . . . . ..… . . . . . 13

7. Statement  regarding  oral  argument . . . . . . . . . . . . . . . . . .   22

8. Issues  presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

9. Statement  of  facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

10.  Summary  of  the  argument . . . . . . . . . . . . . . . . . . . . . . . .   28

11.  Argument   (Case Law) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

12.  Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

14.  List  of  Attachments . .( 7 of them ). . . . . . . . . . . . . . . . . . . 44

13.   Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 56 of 56

4.  **Time  Table – Dates Management** . . .  . . . . . . . .  4

April 2009  -- Fredrica Wiegand Kinnard filed 3 lawsuits against brother Frederick Wiegand Jr., at request of Dan Gibson, city planner of Lockhart, Caldwell County, Texas
A.   Criminal misdemeanor lawsuit 38,771
B.   Criminal felony  lawsuit  10189,  and
C.   This  civil lawsuit 2009 - Other - 0369

Frederick  replied with two  civil attorneys  Paul Browder and Susan Henricks  and one criminal attorney.

September 2010 -- Frederick returned from his work as deepwater drilling superintendent in Vietnam, South East Asia, to appear in person at misdemeanor criminal trial in Lockhart, Caldwell County, TX; and Assistant DA Luke Alsop moved for dismissal immediately, and Judge Edward Jarrett of Luling, TX, dismissed criminal misdemeanor case.  Collateral damages to Frederick were the loss of his $15,000 USD per month job and damages to his international work reputation.

September 2010.  Felony lawsuit by  sister and neice and dead husband was designed to cause extreme collateral damages and prevent  Frederick  from defending himself in the civil lawsuit 2009 - O - 369 with no discovery for more than five years, other than filed affidavits.

January 30, 2012  Susan  Henricks  appeared at summary judgment hearing for Frederick Wiegand Jr., and summary judgment was denied.

8 September 2015 --Lower court rejected all evidence of Frederick Wiegand Jr., and without notice, held non-jury trial even though jury trial was requested and jury trial fees paid five years earlier. Final judgment issued by original court in city of Lockhart, county of Caldwell, state of Texas.

8 September 2015 surprise Final Judgment issued by the lower courts 421st Todd Blomerth and 22d R. Bruce Boyer. As of 2 November 2015, Appellant has NOT been able to obtain copy , nor seen judgment.

19 September 2015 Appellant F. Wiegand Jr. first found out about the surprise trial and surprise Final Judgment when he called the Court Coordinator Monica Malaer in Lockhart, TX to ask about when to set the trial.

19 September 2015. Appellant first found out about non-jury trial and its final 8 Sept 2015 judgment on 19 Sept 2015, when he called the court coordinator Monica Malaer, to ask about the trial date setting. Appellant tried to hire appellate attorneys, but not able to do so for various technical reasons.

19 September 2015 Appellant Frederick Wiegand Jr. Prepared his Motion / Notice of Appeal and sent by FedEx to Clerk of Courts in city of Lockhart, county of Caldwell, state of Texas with cheques to pay for Clerk's Record and 21 page Final Judgment in Case No. 2009-Other 0369 in the 22d and 421st state District Courts in Caldwell County, TX;

3rd and 4th week of September 2015 Caldwell County Clerk received Motion/ Notice to Appeal, written paper Request to Prepare Clerk's Record, paper cheques for 21 pg final judgment and for 812 pages of Clerk's Record.

First week of October 2015, Clerk 3rd Court of Civil Appeals received some documents.

Second week of October 2015, Clerk 3rd Court of Civil Appeals notified Appellant Wiegand by email that case was ACCEPTED, and gave it a 03 15 611 CV case number.  Then at 6 pm Appellant received eNotice that his case was transferred to 7th Court of Civil Appeals in Amarillo, TX.

21 October 2015    Caldwell County Clerk's Record was filed in the Third Court of Civil Appeals in Austin, TX as 03 15 611 CV.

23  October 2015  9 am Appellant FedExed his first Motion to Extend Time to File Brief to 3rd Court of Civil Appeals in Austin, TX.

23 October 2015 6 pm Appellant received email Notice from Clerk 7th Court of Civil Appeals in Amarillo that his appeal case 3 15 611 CV had been transferred to Amarillo from Austin.

24 October 2015  Appellant subscribed to online eLawServices filing system.

25 October 2015 Sunday  Appellant emailed 2d Motion to Extend and incomplete Brief to eLawServices for online filing next business day in 3rd Court of Civil Appeals, including Incomplete Brief for 3rd COA dated 25 October 2015.

26 October 2015 6 pm  Appellant received confirmation email notice from 7th Court of Civil Appeals, stating that case 03 15 611 CV has been transferred to 7th Court of Civil Appeals in Amarillo, TX and given a new number 7 15 406 CV and Clerks Records received in the 7th COA.

26 October 2015  Appellant tried to email 2d Motion to Extend Time to File Brief in 7th Court of Civil Appeals, but email did not clear into eLawSerivces system due to a formating problem of PowerPoint evidence.

27 October 2015 Appellant  re.sent by email to eLawServices his 2d Motion to Extend Time for 3rd COA, but eLawServices did not accept because of a formatting error or style error.

28 October 2015 Appellant received email from eLawServices asking if eLaw should try to file again his 2d Motion to Extend including Incomplete Brief, and Appellant replied Yes, please re.send.

28  October 2015  Appellant does not know if 3rd Court of Civil Appeals forwarded his FedExed paper First Motion to Extend Time that 3rd Court received for sure by tracking FedEx number, to the 7th Court of Civil Appeals, so the 7th Court Clerk did not know about it.

28 October 2015 Appellant received notice at 6 pm via email from 7th Court of Civil Appeals  Clerk Vivian Long, 7th Court of Civil Appeals in Amarillo, TX, stating that deadline for filing a Corrected Brief is Monday, November 9 2015.  But Notice did not state whether or not the 7th Court of Appeals had received the 22d +

421st Clerks Records from Lockhart, TX, including Appellant's First FedExed Motion to Extend, nor Appellant's Second eFiled Motion to Extend, nor stated in any Notice of the 7th COAppeals related this timetable.  Notice from Clerk 7 COA did not state basis for the acceleration of deadline for filing Brief for 7 15 406 CV.

29  October  2015  Thursday.  Therefore, Appellant prepared this his Third (3rd) Motion to Extend Time to File Corrected Brief with title and heading for 7th Court of Civil Appeals and the new 7th COA case number  07 15 406 CV, and  eFiled his 3rd Motion via eLawServices before the close of business hours 28 October 2015, offering the Honorable Court the following explanations in more detail:

A.

1.  No notice of trial of 2009 Other 369 in lower courts.  Your Appellant F. Wiegand Jr. never received any notice at all of the non-jury trial on or about the 8th of September 2015, although Wiegand paid for and requested a jury trial more than five years ago.

2.  No  notice  of  judgment.  Your Appellant Frederick Wiegand Jr. found out about the final judgment when he spoke to Monica Malaer, the court coordinator in Lockhart, on the 19 th of September 2015. To this date 9 November 2015, Appellant has not received, not seen, and not read the final judgment of 8 Sept 2015.

3.   Immediate filing of Motion / Notice of Appeal by Appellant on 23 September 2015, and mailing FedExing two cheques for payment of 21 pages of the final judgment and 812 pages of the Clerk's Record in Lockhart, Texas, to the lower courts on 28 September 2015 in Lockhart, TX.

4. The Motion/Notice to Appeal  arrived in Austin, TX, to the 3rd Court of Civil Appeals  on the 28th of September 2015 with a cheque

for $205, and the appellate case was ACCEPTED, as shown by blue filestampmark upper right corner.

5. On the 1st of October 2015, Appellant received Notice in US mail of the final judgment, but did not receive a copy of the final judgment.  To this day, the 8th November 2015, Appellant has NEVER seen the Final Judgment from the lower courts.

6. On or about the 23 October 2015, the 3rd Court of Civil Appeals received the Texas state district Clerk's record of 2009 - O - 0369, and that began the time requirement for filing the Appellants brief = 23 October 2015, more or less, give or take one day, in the 3rd Court of Civil Appeals only.

7. On Friday morning 23 October 2015, Appellant FedExed from his home town in Mexico where he works as a petroleum engineering professor, his Appellant's 1st Motion to Extend Time for Filing his Brief, and that arrived in Austin to the 3rd Court of Civil Appeals on the 27th of October 2015 around 10 am.

8. But to be sure that his Motion to Extend would be considered timely, Appellant also eFiled his Motion with supporting documents and his Incomplete Brief to the 7th Court of Civil Appeals in Amarillo, TX on Sunday, because while his FedEx paper documents would take at least 4 travel days to arrive in Austin and then be forwarded to Amarillo, Appellant wanted to be sure because on Monday 26 October 2015 around 6 pm, he received the e.mail confirming that his case 03-15-611-CV had been transferred to the 7th Court of Civil Appeals and renumbered as  07-15-00406-CV.

9. And on the 27th of October 2015, Appellant reviewed the e.filed document sets ACCEPTED by the 7th Court of Civil Appeals;    and found one missing, and that was the set  to the 3rd COA with the Motion to Extend Time that was FedExed to Austin and arrived on 27 Oct 2015 at 9:51 am.  Therefore, Appellant re-filed  his  3rd

Motion to Extend Time to File his Appellate Brief, but this time with the correct style and number, as above and  numbered 07 - 15 - 00406 - CV  in the 7th Court of Civil Appeals in Amarillo, Texas.  Appellant received Notice from Clerk of 7th COA that his 3rd Motion to Extend was ACCEPTED on 28 October 2015.

Therefore, Appellant alleges  that  the time count  to  file the Amended Brief for Appellate Case  07 15 406 CV should start from the date that the 7th Court of Civil Appeals received the lower court Clerk's Record of 812 pages, and that date was the 28th of October 2015.

5. **Table  of  authorities** . . . . . . . . . . . . .. . . . . . . . . . . .   11

CASE LAW  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . Page 11

Ray E. Kier, Appellant vs. F.L. Fahrenthold and G.W. Fahrenthold, Appellees, Court of Civil Appeals, San Antonio, TX, Case No. 13110, 20 February 1957, rehearing denired 20 March 1957.  Trespass to try title suit, to determine boundary line between two lots, whereby surveyor admitted that his plat overlapped the adjoining tract, and that boundaryline could not be, as contended by the plaintiff, located by reference to the plat.  From judgment rendered for defendants by the 135th Texas state district court, San Patricio County, TX; plaintiff appealed.  The  Court of Civil Appeals held that trial court was justified in finding that the 38 year old fence, with respect to which improvements had been made, was the true boundary as acquiesced in by the parties.  Boundary fenceline by estoppel. ( 229 S.W. 2d 744 )

F. W. Wiegand, Jr., Appellant and landowner  vs. Lupe Riojas, Appellee, courthouse janitor,  3rd Court of Civil Appeals, Austin, TX, appellate case number 03-1977-12482  ,  dated  30 March 1977.  In favor of the Appellant Wiegand, case law states that "… a permissive easement, no matter how long in existence,  can NEVER ripen  into land ownership … ".  Wiegand appealed from the lower court judgment in Caldwell County, TX, and brings the single point of error that Lupe Riojas failed to prove the elements necessary to establish an easement by prescription across the Wiegand property.  Appellant's point of error sustained, and trial court judgment reversed.  Riojas takes nothing by his suit.  ( 547 S.W. 2d 287 (1077))

King Ranch, Inc. Appellant v JS Trophy Ranch LLC and Los Cuentos LLC, Appellees, from the 79th Judicial District Court, Jim Wells County, Texas, Honorable Richard C. Terrell, Presiding Judge, Trial Court No. 12-12-51717-CV case, dispute over boundarylines established in 1891 by deeds compared to fenceline, Fourth Court of Civil Appeals, San Antonio, TX, 4th COA case number 04-13-00606-CV.   Affirmed in part; Reversed and Rendered in part.

Many others, time permitting.

6.  **Statement  of the case** . . . . . . . . . . . . .  . . . . . . . .. . . . . . Page     13

This is a  case about real estate law  in the  State  of Texas.  It has been  promoted  by  the  City of Lockhart and the locals because  the  inherited Wiegand real estate  is  very  important and valuable  to the  development of the small town of Lockhart, county of Caldwell, Texas.

It is  complicated  due  to  two  criminal  lawsuits  brought  at the same  time  as  the  original  civil lawsuit 2009 – Other – 0369 CV which was filed by Appellant's blood sister in April 2009 in the Texas district court in the city of Lockhart, county of Caldwell, state of Texas 78644.  The two wrongful criminal lawsuits  by  the  county of Caldwell, Texas,  at the request of Appellant's sister Fredrica and sister's blood daughter Cassandra, and dead husband Steve Kinnard,  are continuously brought against Appellant, namely misdemeanor case 38,771  and  felony case 10189, Caldwell County, TX, since September 2010.  These  two  criminal  lawsuits constitute  extortion, and  are being used to create illegal collateral damages much in excess of the monetary damages $7,500 USD prayed for by the original plaintiffs in the lower court, again being sister Fredrica Wiegand Kinnard and daughter Cassandra Carpenter Jones Snider Dillaveaux, and a dead man who was the husband of sister, then called Steve Kinnard.

"You  cannot  use  a  bogus and false criminal lawsuit  to settle  a civil case."

That is  the FIRST  PREMISE  of  this  appeal.

Appellant  Frederick  returned  from his deepwater  drilling superintendent job in Vietnam with CONSONJOC  in Saigon – Ho Chi Minh City, to Lockhart, TX; to be present in person with criminal counsel for the trial in the misdemeanor case 38,771 on the 2d floor of the old Caldwell County courthouse in Lockhart, TX.  When criminal misdemeanor case was called, counsel announced ready, defendant was present in person in suit and tie;  and  Judge Edward Jarrett from Luling, TX, called the case.  Judge Jarrett called both attorneys to the bench, and when the attorneys returned to their respective desks,  Luke Alsop the assistant district attorney announced in loud voice for Caldwell County, TX,  that the prosecutor withdrew the charges.  Judge Jarrett signed the order of dismissal of the criminal charges, and that was the end of the criminal misdemeanor case 38,771.  Attachment 1 is a copy of the dismissal order 11 October 2010.   It was only after five years of continuous complaints to state and federal authorities that Caldwell County, TX District Attorney's Office mailed a plain (not a certified copy as requested by Wiegand ) photocopy of said order by Judge Jarrett, and to the date of this brief in 2015, Caldwell County has continuously refused to make copies of the more than 300 pages of "secret" documents in criminal misdemeanor case 38,771 State of Texas, Caldwell County, Fredrica Wiegand Kinnard et al vs. brother Frederick Wiegand Jr., and has completely refused to give Appellant ANY copies whatsoever of the felony case 10189, Caldwell County vs.  Wiegand Jr.  Attachment 2 is a copy of the denial letter by the Texas Attorney General Office, authorizing Caldwell County District Attorney to refuse to US mail nor deliver ANY copies of the criminal cases 38,771 and 10189 to your Appellant.

Extorsion is a crime by the Texas Penal Codes, Code 31 Section 02 under Theft Sec. 31.03 (a) A person commits an offense if he ( here the Appellant has since 2009 and continues to accuse the two living Appellees Fredrica Wiegand Kinnard and daughter mentally-ill Cassandra Carpenter Dillaveaux, but not the dead husband Steve Kinnard ) of theft and criminal conspiracy Sec. 15.02, whereby the Appellees have intentionally with mens rea deprived and stolen from Appellant many of his sentimental memorabilia, jewelry, money and other personal belongings, both inherited and purchased by Appellant with his earned money, and appropriated Appellant's property with their combined intent to deprive the rightful owner Appellant of his inherited and purchased properties . . . and by coercion . . . ( constituting extortion ).

Collateral damages to Frederick Wiegand Jr. included the loss of all his personal properties in Bahrain and Saudi Arabia, being close to sixty five thousand dollars of personal belongings; the loss of his $15,000 USD job in Vietnam; and all costs of flights, hospitalization for extreme stress in San Francisco, CA, attoney fees, and stolen personal properties, amounting to about ninety-five thousand dollars ( $95,000.00) of his life's savings and work earnings; and damages to his international reputation as drilling superintendent and supervisor and engineer amounting to an estimated future amount of one hundred thousand dollars ($100,000.00). Collateral damages have included the desecration and invasion of his son's co-owned Double Wide Mobile Home at 75 Thayer Road, inside the city limits of Lockhart, Caldwell County, Texas, and his inherited home at 230 Wiegand Road, outside the city of Lockhart, but inside the County of Caldwell, state of Texas, and the multiple invasions, burglaries, thefts, destructions, desecrations, of these two Wiegand homes, over a period of more than five (5) years in a row. Thefts in

the Wiegand mobile home are estimated at around $35,000, not including destruction to windows, doors, and interior;  and thefts at the Wiegand family home  are estimated at around $75,000, not including destruction to windows, doors, and interior, including Appellant's personal sentimental belongings saved during his entire lifetime, his US Army military uniforms, money, jewelry, antique collectors guns, books, tools, machinery, and other belongings of Appellant which have been stolen by Appellees and other thieves.

Dale Olson surveys on Wiegand properties.
The  deed  of  12.0 acres of land in the SouthWest corner of the Wiegand Family tract of land, specified that the mutually-agreeable surveyor was to  be  the Claude  Hinkle surveying company of Lockhart, TX.  Hinkle Surveying had made several surveys of for the Wiegand Family and had a history of surveys acceptable to both Frederick Wiegand Jr. and sister Fredrica Wiegand Kinnard.

But  in 2008 when Fredrica Wiegand Kinnard, Plaintiff in 2009-O-369, brought in an out-of-county surveyor who had never made any surveys on the Wiegand nor Kinnard nor sister Phyllis Metcalf inherited properties out of the Navene Lee Wiegand  Estate, filed in the Caldwell County courthouse;  then  Frederick  Wiegand Jr. protested and contested  the survey work of the Dale Olson Survey Company from Bastrop, Texas.

The  Dale  Olson  Survey  Company  violated more than 21 surveying  laws, called Brown's  Laws  of  Surveying.  Those  are enumerated  in Wiegand's  affidavits.  The  most important  two violations  of the Laws of Surveying were and are these:

1.  The Dale  Olson  surveys did not and do not respect the senior surveys; and
2.  The  Dale  Olson surveys  started  at  the wrong  point of beginning.
3. And many other surveying errors.

Therefore,  Frederick Wiegand Jr.  a licensed professional engineer in the State of Texas, disagreed with the Dale Olson surveys which have been used to accuse Frederick Wiegand Jr. of two crimes, namely the 38,771 accusation of misdemeanor theft of metal T-post in the fence that Fredrica Wiegand Kinnard built across Frederick's  road, being the abandoned portion of County Road 220; and the 10189 accustion of felony destruction of the fence that sister Fredrica W. Kinnard built in April 2010 to block the ingress and egress of the Wiegand Family from the Wiegand properties and house at the two Wiegand bridges at Clearkfork Creek, Caldwell County, Texas.  Appellees claim that they have obtained ownership of the Wiegand bridges based upon the Dale Olson GPS Total Station computerized surveys.  Appellant alleges that this is completely and totally incorrect – that the Wiegand bridges were constructed by Appellant and his father many years ago, and were always considered by the Appellees to be Wiegand property from 1944 until the Dale Olson GPS – Total Station survey of December 2009 and January 2010.  The  Appellees  agreed that for  (2010 – 1944 = 66 ( sixty-six ) years in a row ), the two concrete bridges constructed by Wiegand Appellant, belonged to Wiegand Appellant.

The importance  of  the  league abstract line  between  the Francis Berry League Abstract  and  the  Esther  Berry  League Abstract. Back circa 1792 when the Spaniards  made  their first topographical surveys in what was then New Spain,  the Spanish surveys

measured a league line using their technology of those years.  It was  the league line that continued throughout the history of the Mexican Empire, the Mexican sale to the colonists of San Antonio and Bastrop, Texas;  which league line continued to stand as accepted by the Republic of Texas under Stephen F. Austin, and stood as the league abstract line under the founding of the State of Texas.  It  is  the  same league abstract line that is in use today, except for several exceptions, including but not limited to the following:

1. The Francis Berry – Esther Berry league abstract line, as shown on the maps and deeds in the Bastrop and Caldwell County courthouse records, was a straight line by surveying methods from circa 1792 until 2010.

2. The ownership boundarylines were considered to be where the propery owners built the fences since the late 1890s.  The fencelines ownershiplines were as straight as practicable, based upon the topography, which was flat to the East, but hilly to the West, including crossing two creeks.

3. The 2010 Dale Olson surveying methods were the use of the new technology GPS Total Station satellite surveying.  This modern surveying technology did not, and does not follow exactly the boundary landowner lines where the fences have stood since the 1890s, and does not follow the league – abstract line as shown on the county maps.

4. The city planner Dan Gibson was among the first to learn that there was an error of about 30 feet wide along the entire length of the Francis Berry – Esther Berry league abstract line, when comparing the long-standing fenceline boundarylines, with the new 2010 GPS Total Station satellite survey lines.  That  is  where the County Road 220 goes  from Highway 183 to the SouthWest, separating the inherited tracts of land  of

brother Frederick Wiegand Jr. and sister Fredrica Wiegand Kinnard.

5. This error did not affect sister Phyllis Wiegand Metcalf because  Phyllis  inherited lands on both sides of the Francis Berry – Esther Berry league abstract line.  And the abandoned County Road 220 wandered through the mesquite brush to T into Farm to Market FM Road 20 on the West side of the Lockhart State Park.

6. But  the 30 ft error of the league – abstract line affected the part of County Road from the East side of the Lockhart Airport down where the City of Lockhart annexed the road and changed its name to Cunningham Street, to the point where County Road 220 began / begins again and ended after one hundred feet.

7. That 100 foot portion of the active County Road 220 shows the 30 foot error, and is documented in the records of the City of Lockhart, TX.  The Caldwell County Road Department does not keep nor make surveys, so the Road Department has claimed for many years.  Therefore, the error was accepted by the City of Lockhart, as a public easement and ROW Right Of Way.  But neither the Caldwell County nor the City of Lockhart maintain any portion of County Road 220 to the normal city nor county standards because the flood waters from normal rainfall, cut part of County Road 220, and damage the two Wiegand concrete bridges almost every year.  Attachment 3. Letter by Dan Gibson, city planner, admitting surveying error by GPS – Total Station survey of extending city limits over the Appellant Wiegand's 141.38 acres of land.

8. The stated objective and goal of Fredrica Wiegand Kinnard was to, and continues to be; to block the abandoned County Road 220, to prevent the development and sale of the

inherited family properties until after her death and thereafter.  Fredrica Wiegand Kinnard  is now about 72.9 years old, and would be 73 years of age on her birthday of circa 19 January 1943.  Fredrica Wiegand Kinnard has publicly stated that she wants to preserve the Indian artifacts and burial grounds down by Clearfork Creek, and has offered that as her reasons for blocking the abandoned portion of County Road 220 from the end of Cunningham Drive all the way across the East Branch of Clearfork Creek ( the first Wiegand concrete bridge ) and then across the main Clearfork Creek ( the main Wiegand concrete bridge ) to the SouthWest corner of the Wiegand Family 141.38 acre tract which abuts and adjoins the Lockhart State Park to the NorthWest, the Fredrica Wiegand Kinnard tracts to the West and to the SouthWest and the Northern ownership-boundaryline – fenceline of the Fredrica Wiegand Kinnard tract called Tamayo tract.

9. The goal of the city of Lockhart is to wrongfully dispossess Appellant of his legally-inherited properties so that the lawyer family of the local title opinion companies can obtain the Wiegand properites without paying for them, like in the divorce case of the Appellant  79-CI-791 in 1979, when the Appellant was put in solitary confinement for 13 days in a row, without being let out of his cel for even a half hour per day, until he signed the deed to his ParkWay Subdivision in Lockhart, Caldwell County, Texas.  Now that ParkWay Subdivision of about 77 acres has 113 houses and business office buildings, averaging a worth of $150,000, so the estimated total value, by Caldwell County tax statements, of the Wiegand property that the Fielder family by the Caldwell County district attorney of the time, Richard Aubrey Fielder, obtain, is about 113 x $150,000 = about seventeen million

dollars worth of properties.  So that is what the local establishment plan again, except this time, by using bogus and false criminal lawsuits, namely 38,771 and 10189, to extort and criminally coerce and force Appellant to sign a deed of his 141.38 acres inside the city limits of Lockhart, county of Caldwell, state of Texas, over to another person; and then take it from the other person, just like the prosecutor Richard Aubrey Fielder did in 1979 with Appellant's  ParkWay Subdivision inside the city limits of the small town of Lockhart, Texas.

10.      No title opinions have ever been served or presented to the Appellant by Appellees in the 5.6 years of this litigation.  That is one reason for confusion.  Appellees had / have the duty to present title opinions BEFORE trespassing on adjoining properties and surveying off what Appellees want to take, without consent of the other landowners.  Therefore,  the final judgment of both lower courts in Caldwell County, TX, without title opinions is an incomplete and flawed final judgment concerning land because it does not include title opinions.  There is no such law as  "you can survey with a Total Station GPS satellite survey instrument and thereby take title to land where the landowner common boundarylines of ownership were in the past agreed to be the barbed-wire fences for (2010 – 1934 = 66 yrs ) sixty-six years", especially when the topographical satellite GPS Total Station survey is contested and flawed, as in the case of the Dale Olson flawed and contested surveys.

7. **Statement  regarding  oral  argument** . . . . . . . . . . . . .  22

Appellant  is  contacting  various law firms in Texas, and especially in Amarillo, Texas, to hire an appellate attorney to present the oral argument, once a trial date has been set.

Need trial date to tell lawyer when.

8. **Issues  presented** . . . . . . . . .. . . . . . . . . . . . . Page    23

**Issue 1 of 07-15-00406-CV**

Should a county be allowed to ignore the laws, specifically the Texas Transportation Code,  of the State of Texas concerning the abandoned portions of County Road 220 in Caldwell County, State of Texas, by refusing for many years to vacate the abandoned parts of the county road 220?

See PowerPoint presentation evidence (Attachment 3)  submitted herewith as Supporting Evidence to Issue 1 of 07-15-00406-CV, a presentation by Frederick Wiegand Jr and son Carl Jonathan Wiegand to the Caldwell County Commissioners Court in public hearing on ?? July 2009 in the Caldwell County Courthouse, Lockhart, Texas 78644.

**Issue 2 of 07-15-00406-CV**

Should a lower state district court knowingly conduct a non-jury trial without notifying the Defendant of the trial date, and thereby preclude and deny the Defendant his right to a paid-for jury trial, and his rights to present Defendant witnesses?

Neither the Clerk of the lower Texas district court, nor the attorney for the Plaintiffs, can adequately show Notice to the Defendant. Therefore, the non-jury trial was held without notice to the Defendant.

**Issue  3  of  07-15-00406-CV**

Should a Texas state district court allow bogus and false criminal lawsuits against the Defendant, namely 38,771 and 10189,  when at the same time, no decision for the boundaryline landownership

lines had been made, nor have been made,  from the date of the three simultaneous lawsuits ( one civil and two criminal in April 2010) until the date of the final judgment on 8 September 2015?

The wrongful combination of simultaneous civil and criminal lawsuit constituted extortion, theft by coercion, and other civil and criminal wrongdoings, because there was NO COURT DECISION as to the boundaryline landowner lines of the properties in question. The combination of the remaining lawsuits ( Appellate Suite 07-15-00406-CV  with  Caldwell County felony lawsuit  10189 ) both in existence and active at the filing time of this Brief, still do constitute extortion and theft by coercion, violating Texas Penal Code Rule 31 because still there is no final decision as to the landowner lines and validity of the GPS Total Station topographical land surveys by Dale Olson, surveyor of Bastrop County, TX.  The collateral damages to Appellant Wiegand much outweigh the damages alleged and claimed by the Appellees, including the dead husband Steve Kinnard, by a factor of at least ten (10 ) times greater collateral damages to Appellant than to Appellees.

**Issue 4 of  07-15-00406-CV**   Can a plaintiff who owns no land, does not vote, does not work because of a record of mental illness, receives social security payments as an invalid, be a competent plaintiff in a lawsuit involving land that the plaintiff does NOT own?

Cassandra Carpenter Jones Snider Dillaveux owns no land, pays no taxes, does not vote, has a history of mental illness, has multiple children out of wedlock, can not work for a living due to health illnesses, lives on disability payments and gifts from friends and relatives, lives in her mother's house ( her mother being the

primary Plaintiff in all three lawsuits against Appellant ), has no legal Power of Attorney, has torn down Appellant's long-standing fences before his eyes, has entered upon Appellant's properties, has aided her convicted child-molester son Jonathan Davidson and her ex-husband convicted heroin felon Mike Snider  to steal Appellants personal belongings, being money and jewelry, from Appellant's DoubleWideMobileHome next to the home of his sister Fredrica Wiegand Kinnard on Cunningham Street, a gravel road street in the city limits of Lockhart, county of Caldwell, state of Texas;  and in toto, Cassandra Snider Dillaveaux has no legal standing nor rights whatsoever to bring several slanderous, coercive, defamatory and extortive civil and criminal lawsuits against her blood uncle, the Appellant herein,  within the second degree of blood relationship.  The land in question does NOT belong to Cassandra Dillaveau; the fence wires and T-posts do NOT belong to Cassandra Carpenter; the gravel road does not belong to Cassandra Jones Snider; and she owns NOTHING that is a part of this lawsuit, has paid nothing, and is owed nothing.  Therefore, Cassandra Carpenter Jones Davidson Snider Dillaveaux has no rights whatsoever to any recovery from any of the three lawsuits wherein Cassandra Carpenter is Plaintiff.

9. **Statement  of  facts** . . . . . . . .. . . . . . . . . . . Page     26

   A.  The estate  of  Steve Kinnard, one of the Plaintiffs in the
   original action 2009-O-369,  has never been completely and
   properly probated, and therefore Steve Kinnard who died
   several years ago, can NOT  be  a  credible plaintiff nor
   appellee.  No documents  have  been  served, nor to the
   knowledge of Frederick Wiegand Jr.  the Appellant herein,
   have been properly filed in the lower courts to continue any
   claims by a deceased person into a Final Judgment.  Appellant
   has NEVER  been served with any documents from the Estate
   of Steven Kinnard, deceased husband of Plaintiff Frederica
   Wiegand Kinnard, Appellee herein.  Therefore,  Steve Kinnard,
   nor his estate, have no legal rights to any final judgment in
   any lower court.

   B. Cassandra Carpenter Jones Snider Dillaveaux has no rights in
   the lands in question in these lawsuits, owns nothing involved
   in the three lawsuits brought simultaneously against her
   blood uncle, within two degrees of blood relationship; has lost
   nothing, is owed nothing; and therefore deserves nothing
   from any of these three wrongful lawsuits.

   C. None of the Appellees obtained the necessary and required
   permits to build a barbed-wire fence inside the city limits of
   Lockhart, TX; and violated the Texas Agricultural Code by
   intentionally building a surprise fence while Appellant was
   working internationally as drilling superintendent.

   D. Appellant was NEVER notified of a trial date of 8 September
   2015, and to this day of filing his brief, has NEVER received or
   seen the final judgment signed on 8 September 2015.  That, in
   itself, limits greatly the ability of the Appellant to prepare this

Brief, and gives cause for his Motion to Extend, and Motion to Amend Brief at a later date.

10. **Summary of the argument** . . . . . . . . . . . . . . . . . . . . . . . .   28

A.  Part of  the problem in this case 07-15-00406-CV, derived from the lower court's case 2009-Other-0369 CV, is the mis.understanding of the terminology of measuring land and landowners boundary limits of their land.

In this appeal case at hand, 07-15-00406-CV, Appellant offers the Honorable Court the explanations that:

A.1.  "boundary" and "boundaryline" mean and indicate the landownership limit line.  That is to say, that the landowner owns the land up to the boundaryline.  Ownership may or may not include the boundaryline marker, usually some type of fence or wall.

A.2.  "fenceline" is the physical location of the fences as constructed by someone.  "Fenceline" may or may not be the "boundaryline".

A.3.  Imaginery surveying boundarylines  are often not the same as the physical fencelines because of topography, vegetation brush, trees, and other similar physical obstacles to constructing fences.

A.4.  Surveying is the technique, profession, and science of determining the terrestrial or three-dimensional position of points, and the distances and angles between them.

A.5.  A Total Station, called TST (Total Station Theodolite) is an electronic/optical instrumental theodolite used in modern surveying and building construction.  The Total Station is an electronic theodolite ( a transit ) usually integrated with an electronic computerized distance meter ( EDM ) to read slope angles and distances from the instrument to a particular point. Total Stations are mainly used by land surveyors and civil engineers,

to record features as in topographic surveying, or to set out features ( such as roads, houses or boundaries ).
A.6.  Theodolites have been in common use since the 1500s, including the use of telescopes.

B.  The adjoining landowners have repaired the common fences between them since 1991, when they inherited their portions of the Navene Lee Wiegand Estate Ranch, which was set out in the will of Appellant's Father prior to his death on the 15th of March 1978. Both Appellant Frederick Wiegand Jr. and Appellee Fredrica Wiegand Carpenter Kinnard have full knowledge of those wills, expecially since Fredrica Wiegand Kinnard was the executrix for their mother's will, the will of Navene Lee Wiegand, filed in the Probate Records on the 2d floor of the old Caldwell County, TX courthouse in Lockhart, TX; at Volume  66, Pages 17-36, dated 13 February 1991.'s will, the will of Navene Lee Wiegand, filed in the Probate Records on the 2d floor of the old Caldwell County, TX courthouse in Lockhart, TX; at Volume  66, Pages 17-36, dated 13 February 1991.  In that will, the Appellee Fredrica Wiegand Carpenter Kinnard drew with her own hands, the map of the land as she Fredrica thought of it, but the map was wrong in part, and correct in part.  Fredrica drew the map to claim a part of County Road 220 between the first Wiegand Gate on County Road 220 and the second Wiegand Gate on County Road 220.  Attachment 4 Map hand.drawn by Appelle  Fredrica Wiegand Carpenter Kinnard in December 1990,  with her handwriting and signature "Rica", saying "PS. I'm sorry, but sometimes when I'm angry or stressed, I don't feel very loving."  Appellant loves his sister, too; but the locals who are pushing Frederick's sister to file three lawsuits against her brother, have no morales nor ethics, but a lot of greed and vengeance.

C. The public road County Road 220.

Texas Transportation Code clearly sets out in Title 6. Roadways and Subtitle C. County Roads and Bridges, Chapters Chapters 251 through 280, and other Titles, also, but more specifically Chapter 251 Subchapter A. General Provisions Section and Subchapter B. Establishing and Closing Roads, Sec. 251.057 Abandonment of County Road, which states "(a) A county road is abandoned when its use has become so infrequent that one or more adjoining property owners have enclosed the raod with a fence continuously for at least 20 years. The abandoned road may be re.established as a public road only in the manner provided for establishing a new road. This is the case with that portion of the County Road 220 that runs across the Navene Lee Wiegand Estate Ranch from the city limits of the small town of Lockhart, TX, all the way around the SouthWest quadrant of the town to "Tee" into Farm to Market Road FM 20 behind the Lockhart State Park, Caldwell County, TX.

11.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 31

Errors of the Texas state district courts include, but are not limited to the following:

A.   When the City of Lockhart, county of Caldwell, state of Texas, sued Frederick Wiegand Jr. circa 1979 concerning an easement and Right Of Way to install the Twin Island Estates 18 inch sewerline across the Wiegand property, behind the Wiegand DoubleWideMobileHome on 75 Thayer Road, Lockhart, TX 78644, in lawsuit styled and numbered City of Lockhart vs. Frederick Wiegand Jr., case number  79-CI-791; the present-day 2015  judge Todd Blomerth was then 1979 the city attorney for the city of Lockhart, and brought suit against Frederick Wiegand Jr. ( Appellant in this 2015 appeals case 07-15-00406-CV) for an easement for the city for the Twin Island Estate sewerline.
Due to the fact that Todd Blomerth has financial and political ties to the two Fielder title opinion companies in Lockhart ( who dispossessed Frederick Wiegand Jr. of his ParkWay Subdivision in his 1979 divorce from Patricia Yesenik Wiegand ) by the Caldwell County District Attorney and simultaneous city of Lockhart attorney, Richard Aubrey Fielder ( who was later disbarred by SBOT); and due to the fact that Todd Blomerth followed Richard A. Fielder as city attorney for Lockhart;  therefore, the Honorable Todd Blomerth is NOT IMPARTIAL towards your Appellant, and displays an overt antangonist demeanor towards your Appellant in Texas state district court hearings in Lockhart.  Your Appellant Frederick Wiegand Jr. has filed Motions for the Recusal of Judge Todd Blomerth in several other lawsuits involving lands in Caldwell County, just because Todd Blomerth was city attorney for the city

of Lockhart in the past; and continues to favor the City of Lockhart, and also the County of Caldwell.

B.  Even so, and but, that does not give a Texas state district judge the authority to ignore the Texas Transportation Code, which is considered Texas law.  More specifically, Texas Transportation Code Section 251.058, which also states as a matter of Texas law, the following, as quoted:

"Sec. 251.058.  CLOSING, ABANDONING, AND VACATING PUBLIC ROAD.  (a)  A property owner may not enjoin the entry or enforcement of an order of a commissioners court, acting at the request of any person or its own initiative, to close, abandond, and vacate a public road or portion of a public road unless the property owner is entitled to an injunction because:

(1) The person owns property that abuts the portion of the road being close, abandonded, and vacated; or

(2) The portion of the road being closed, abandoned, and vacated provides the only ingress to or egress from the person's property.

(b)  Title to a public road or portion of a public road that is closed, abandoned, and vacated to the center line of the road, vests on the date the order is signed by the county judge, in the owner of the property that abuts the portion of the road being closed, abandoned, and vacated.  A copy of the order shall be filed in the deed records of the county, and serves as the official instrument of conveyance from the county to the owner of the abutting property. The order shall:

(1) include the name of each property owner who receives a conveyance under this section;

(2) include the dimensions of the property being conveyed to each property owner; and

(3) be indexed in the deed records of the county in a manner that describes:

    (A) the county conveying the property as grantor; and

    (B) the property owner receiving the conveyance as grantee.

(c)  This section does not deprive a person whose property abuts the road at a point other than the portion of the road being closed, abandoned, and vacated of a right to seek compensation for damages caused by:

    (1) any depreciation in the value of the property; or

    (2)  any impairment to the property owner's right of ingress to or egress from the property."


C.  The words "vacated to the centerline of the abandonded public road"are very significant in this appellate case 07-15-00406-CV for several reasons:

C.1.  Reason 1.  Your Appellees, who are the Plaintiffs in Judge Todd Blomerth's court, are only entitled to acquire ownership of one-half of the abandoned Caldwell County Road 220 in the State of Texas, as a matter of  the law, called the Texas Transportation Code.

C.2.   Reason 2.  Since the locals plan to develop this land AFTER the Wiegand family is oustered and dispossessed of their inherited properties;  then both Caldwell County, and the City of Lockhart, and the Texas state district court, DO NOT WANT TO OBEY THE TEXAS TRANSPORTATION CODE.  They can read it, say they understand it; but in the last long many years ( 2015 – 1944 = 71 years ) since Appellant's father bought the land in 1944 and tried to get the Caldwell County to improve and repair County Road 220, and the Caldwell County, and the City of Lockhart, have always refused to repair the road CR 220;  but at the same time the Caldwell County officials refused to VACATE the road and legally transfer title to the Wiegand family;  then the reason can only be;

and has to be; that the locals plan the development of the Wiegand lands, for themselves only (like they did with the Wiegand ParkWay Subdivision in Lockhart, TX in 1979 ).And they are willing to break the laws of the State of Texas, and the United States of America, to get what they want.

C.3. Reason 3. Since the state Texas law requires that the abandoned portion of Caldwell County Road 220 be vacated, and title prepared and filed for one half of the land to each of the adjoining land owners; then the North half of the abandoned Caldwell County Road 220 from its present end at the end of Cunningham Drive, all the way to the end of the disputed land at the SouthWest corner of the Wiegand tract ( which abuts to the North East-West boundary ownership line of the Appellee Fredrica Wiegand Kinnard ), that Northern one-half of the Caldwell County Road 220 is claimed by the Appellant Wiegand herein, just the same as in the state district court pleadings, VACATED TO THE CENTER LINE OF THE ROAD, per Texas Transportation Code Sec. 251.058 Closing, Abandoning, and Vacating Public Road.

C.4. Reason 4. *De facto*, when the 7th Court of Civil Appeals orders Caldwell County, Texas, to vacate the disputed portion of abandoned County Road 220 by public notice and state law procedures; then automatically both of the criminal lawsuits by Appellees against Appellant Wiegand, shall fail; because the Dale Olson Total Station survey erred by calling the ownership line North of, and past the centerline of the vacated roadway, onto the Wiegand property. That also automatically results in trespass by the Appellees ( Steve Kinnard is excluded, God rest his soul, because Steve was a good man, and a friend to Appellant.).

C.5. Reason 5. Therefore, the five year and seven month wait ( 5 yrs 7 months ) for Appellant Wiegand for justice is coming closer, as

the case is moved out of the jurisdiction of the locals in the City of Lockart, county of Caldwell, Texas.

C.6.  Reason 6.  The Kinnard new fence constructed in February and April of 2010 blocked County Road 220, was built through the Wiegand Gate #2 to block the gate, and was illegal as a matter of Texas law.  Everyone who can read the law, knows that it is illegal to block a public road.  Therefore,  the actions by the Appellees and their assistants at all levels, were distinctly designed to enrage and anger and disturb your Appellant Wiegand, intentionally, on purpose.  See photo of the Kinnard fence still standing in the County Road 220 inside the Lockhart city limits, as Attachment 6.

C.7.  Reason 7.  Both city permits and county permits were required for the Appellee Fredrica Kinnard to build a 5-strand barbed-wire fence inside the city limits of Lockhart, TX; and inside the county of Caldwell. See photo of the Kinnard fence still standing in the County Road 220 inside the Lockhart city limits, as Attachment 7. But Appellees did NOT obey the local rules, and NEVER obtained nor have presented in this case, any local permits to build such a contested illegal fence.

C.8.  Reason 8. The argument of the Appellant is  that the straight line boundary established by the senior surveyors in  the 1800s creating the division of the landowner's land along the boundaryline between the Francis Berry Abstract League and the Esther Berry Abstract League, upon which the Caldwell County tax maps and tax data are based;  thereby establishes the correct landowner's boundary line on the South side of County Road 220, running from the point of beginning of the abstract league line between two abstract leagues on the NorthEast side of US Highway

183, and the point of ending on that same landowner's boundary line along the abstract league line on the SouthWest side of Clearfork Creek and the Lockhart State Park.  This  abstract league line outdates the Dale Olson line by hundreds of years, is the longest landowner's boundary line of the two survey references in question, and that the boundary landowner's line shown by the Caldwell County tax office on its maps, and in its tax database, is the correct landowner's boundary line.  The Caldwell County tax office  maps and database show the ownership boundary line to be on the South side of County Road 220, just as the annexation map by the City of Lockhart.  The  City of Lockhart included the abandoned part of Caldwell County Road 220 in its annexation survey when the city annex the Wiegand 141.38 acre tract in question.  The Caldwell County Appraisal District has for many years included the abandoned part of Caldwell County Road 220 on the Wiegand tract, for many years.  The Appellees cooperated with the Appellant, as sister and brother, from the date of the will of Navene Lee Wiegand, their blood mother,  circa January 1991 until January 2010, in sharing the repair costs of the common boundaryline fence between the Wiegand land and the Kinnard land, acknowledging for (2010 – 1991 = 19 yrs ) nineteen years that Appellees agreed that the fenceline on the South side of County Road 220 was the dividing line between the two tracts of land, being the Wiegand 141.38 acres on the North,  and the Kinnard 98.9 acres, on the South of the Caldwell County Road 220.

Doctrine of Reliance
This doctrine of reliance on the verbal and behavioral agreements and hand-written maps by the Appellees over a time span of nineteen  years (19 yrs), that the common fenceline was the location of the ownership limits boundaryline,  led Appellant

Frederick Wiegand Jr. to spend many years and thousands of dollars to repair the common fences on the South side of County Road 220, because  it was agreed from 1991, when Appellant F. Wiegand and Appelle  F. Wiegand Kinnard that the fence belonged to brother Frederick.  Then as time went on, after 1991 and mother's will approved,  Appellant persuaded Appellee sister to pay for part of the repairs of the common fence, still agreed that said fence on the South side of CR 220 was the boundaryline ownership limits to the inherited tracts of land.  But then came along the daughter of Appellee Fredrica Wiegand Carpenter, a young unemployed female, when she moved from Odessa, West Texas, to Lockhart, TX; and started problems with Uncle Frederick, the Appellant herein.  This was because Cassandra's husband, Mike Snider, a convicted heroin addict consumer and seller had been stealing personal property from the Appellant's two adjoining houses.  Over six (6) theft reports have been submitted both to the Lockhart Police Department and the Caldwell County Sheriff's Department, accusing Mike Snider, Cassandra's husband and father of Mikie, their little boy son, of thefts from Appellant Wiegand, including some of the antique guns that Appellant inherited from his father Frederick Wiegand Sr.   Appellant told Appellee's husband Mike Snider to stay away from the Wiegand houses, because  Mike Snider had offered several times to sell heroin and drug paraphernalia to Appellant Wiegand;  and the local law enforcement officers knew / know that.  But what upset Appellant most is when he saw  with his own eyes, Appellee Cassandra Carpenter and her son Jonathan Davidson tearing down Appellant's cattle fences, and letting Appellant's long-horn cattle onto Appellee's property.  So Appellant made complaints of trespassing to the Lockhart PD and the Caldwell County DA; but in the approximate 12 years of those complaints;  neither the Lockhart PD

nor the Caldwell County Sheriff's Office arrested any named suspect, nor tried anyone for all of those continuous thefts from Wiegand property.

**SURVEYING  CASE  LAW**

*TH Investments, Inc. v. Kirby Inland Marine, LP*, 218 S.W. 3d 173 (Tex.App.14[th] Dist.) 2007 shows procedures for establishing lost boundaries by locating calls to natural objects, and follow the senior surveyor's footsteps on the ground to re-establish the line.

*Hurr v. Hildebrand, 388 S.W.2d 284, 288* (Tex.Civ.App.-Houston 1965, writ ref'd) shows that "When finding the lines of a survey, the cardinal rules is that the footsteps of the original surveyor, if they can be ascertained, should be followed.

*Wheeler v. Stanolind Oil and Gas Co.*, 151 Tex. 418, 252 S.W. 2d 149, 151 ( 1952) states that the footsteps of the original surveyor are controlling and prevail over calls for course and distance.

*Thatcher v. Mathews*, 101 Tex. 122, 105 S.W. 317, 318 (1907) states when the actual lines run by the surveyor can be found, they constitute the true boundary, and cannot be made to yield to course and Attachment 1.
Evidence Supporting Appellant on Issue No. 1  PowerPoint slide show presented at the Caldwell County Commissioners Court public monthly meeting in the Caldwell County Courthouse on the first floor in the small meeting room on the North entrance calls.

## Boundaryline  Case Law

*Roel Garza, Cynthia Garza, JS Trophy Ranch LLC, and Los Cuentos LLS v. King Ranch Inc.*, from Jim Wells County, 4th Court of Appeals District (04-13-00606-CV, ___ S.W.3rd___, 10-08-14)  shows that, in a dispute whether a landowner's boundaryline follows a straight line, or follows the existing fence,   the trial court agreed that the boundaryline followed the existing fenceline, awarding court costs, attorney fees, and damages for trespass to Garza *et al*.

King Ranch Inc. v. Garcia, No. 04-13-00605-CV, 2014 WL 4627592 ( Tex. App. – San Antonio, Sept. 17 2014, no pet. H. ) shows that the Appellant's Motion to File an Amended Brief was granted, and that in conclusion,  the appellate court  found that the trial court erred, and reversed the trial court's judgment, rending appellate judgment that the boundary line between the properties was a straight line.

Although at first glance, this case law would seem to support the Appellees argument that the Dale Olson survey line was the best of the lot;  in actuality, as a matter of law,  this above-mentioned case law supports the argument of the Appellant  that the straight line boundary established by the senior surveyors in  the 1800s creating the division of the landowner's land along the boundaryline between the Francis Berry Abstract League and the Esther Berry Abstract League, upon which the Caldwell County tax maps and tax data are based;  thereby establishes the correct landowner's boundary line on the South side of County Road 220, running from the point of beginning of the abstract league line between two abstract leagues, and the point of ending on that same landowner's boundary line along the abstract league line.  The abstract league

line outdates the Dale Olson line by hundreds of years, is the longest landowner's boundary line of the two survey references in question, and that the boundary landowner's line shown by the Caldwell County tax office on its maps, and in its tax database, is the correct landowner's boundary line.  The Caldwell County tax office  maps and database show the ownership boundary line to be on the South side of County Road 220, just as the annexation map by the City of Lockhart.

12. Prayers . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . Page 41

1.  That  the  7rd Court of Civil Appeals  order  the 10189  arrest warrant from the Caldwell County district attorney be voided and nullified and of no effect nor validity because there is no final judgment as to the ownership of the land in question, nor the boundaryline landowner's line, until this 7th appellate Court of Civil Appeals renders its final judgment;  and then Appellant can appear in person without threat of wrongful coercion.

2. That  the  7rd Court of Civil Appeals  order  that all of  the secret criminal files compiled by the Caldwell County prosecutor's office, specifically  10189 and 38,771,  State of TX vs. Frederick Wiegand Jr.  be forwarded  to  the  Clerk of the 7th Court of Civil Appeals for review by the 7th Court of Civil Appeals, for complete review by non-Caldwell-County officials;

3. That  all evidence  properly submitted to the lower courts by Appellant, but rejected by the lower district courts, be admitted into evidence according to the Texas Rules of Evidence;

4. That the Final Judgment of the lower courts in civil cause 2009-Other-0369 be voided and nullified and over-ruled in perpetuam;

5. That  Appellees, namely Fredrica Wiegand Kinnard, sister, and daughter (neice of Appellant) Cassandra Carpenter Dillaveaux, and dead husband Steve Kinnard, being all of  the 3 original plaintiffs  in the dispute over fences and land boundaries on the Wiegand Estate Ranch in Caldwell County, Texas; go henceforth with nothing, take nothing by their civil and

criminal lawsuits, that Appellees pay their own legal fees and costs of court;

6.  and that  the  boundarylines ownership-lines of  the Wiegand properties remain the same as the dividing fencelines that were established in 1934 through 1944, and thereafter until today's  date, and in tact in 1991 when Navene Lee Wiegand's will was probated in Caldwell County, TX,  by Caldwell County Judge Jarrett, and until 2010 when Appellee sister Fredrica Kinnard was persuaded by Dan Gibson city of Lockhart planner to sue her brother the Appellant with three simultaneous lawsuits;  and

7. That the disputed abandoned County Road 220 be divided down its middle to the adjoining landowners according to the Texas Transportation Code Section 251 and other Sections, whether or not the dividing line is a straight line, as a matter of law;

8. That  Caldwell County be ordered by the 7th Court of Civil Appeals in Amarillo, TX, to legally vacate all of the abandoned portions of County Road 220 in perpetuam, and by registered and filed deed, and deed the North half of Caldwell County Road 220 to Appellant Wiegand, and the South half of Caldwell County Road 220 to Appellee Fredrica Wiegand Kinnard (only), as a matter of law, being the requirements of the Texas Transportation Code;

9. That Appellee Cassandra Carpenter Jones Snider Dillaveau be ordered to continue her mental health treatments in Austin at the Seaton Hospital, as necessary;

10.     That each of the opposing parties pay their own legal costs, costs of court, and all costs associated with all of their lawsuits against Appellant Frederick Wiegand Jr.;

11.     That Appellees be henceforth restrained from entering upon the lands and homes of the Appellant Wiegand; and

12.     That the final order of the Appellate court contain instructions to Appellees that Appellees shall never block the ingress and egress of Appellant on the County Road 220, to the Appellant family lands again in perpetuam.


Respectfully submitted,


e.signature


Frederick  Wiegand Jr.,
Appellant
fredww2000@yahoo.com ( made in the year of 2000 A.D. )
Tel 24x7x365   512  938  7045  since  October 2010
United States Post Office Box  420461
1300 Matamoros Street
Laredo, Texas 78042        ( same US mailing address since 2010 )

13.   **LIST OF 7 ATTACHMENTS** . . . . . . . . . . . . . . . . . . . . .   Page 44

**Attachment 1**.  Dismissal order in misdemeanor criminal case State of TX, Caldwell County,  vs.  Frederick Wiegand Jr., # 38,771, dated 11 October 2010, Lockhart city, Caldwell County, Texas.

**Attachment 2.**  Denial  letter  by  TX  Attorney  General Office, refusing to provide copies  of  criminal  records  held  by  Caldwell County, TX against the  Appellant  Frederick  Wiegand  Jr., in case # 38,771 misdemeanor, and felony case # 10189.

**Attachment 3**.  First page of PowerPoint presentation about the history of Caldwell County Road 220 crossing across Appellant Wiegand lands in the Francis Berry and Esther Berry Surveys, Caldwell County, TX.   Evidence Supporting Appellant on Issue No. 1 PowerPoint slide show presented at the Caldwell County Commissioners Court public monthly meeting in the Caldwell County Courthouse on the first floor in the small meeting room on the North entrance, again requesting Caldwell County Commissioners Court to VACATE the abandoned part of the Caldwell County Road 220 from the end of Cunningham Drive in the city limits of Lockhart, TX; to the SouthWest corner of the Wiegand property inside the city limits of Lockhart, TX, pursuant to the Texas Transportation Code, a state law.

**Attachment 4**.  Map hand-drawn by Appellee Fredrica Wiegand Kinnard for the last will and testament of the mother Navene Lee Wiegand of both the Appellant and the Appellee, showing the

public road, the abandoned part of the public road in dispute, and the trajectory of the new, wrongful Kinnard fence built to block Wiegand ingress and egress to the Wiegand properties.

**Attachment 5.**  Map  by  professional licensed surveyor Jerry Hinkle, son of Claude Hinkle, showing new, wrongful Kinnard fence built to cross abandoned County Road 220 at an angle, built through the main Wiegand gate and blocking the Wiegand gate and ingress and egress to the Wiegand properties.

**Attachment 6**.  Photograph  of  the abandoned part of County Road 220, showing the new, wrongful Kinnard  fence built to block Wiegand ingress and egress, the only way into and out of the Wiegand lands.

**Attachment 1.** Dismissal of misdeamenor criminal case, Caldwell County TX vs. Frederick Wiegand Jr.

Attachment 1

NO. 38771

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE COUNTY COURT |
| VS. | § | AT LAW OF |
| Frederick Wiegand, Jr. | § | CALDWELL COUNTY, TEXAS |

ORDER

The foregoing Motion having been presented to me on this the ___11___ day of ___October___, 20 1?, and the same having been considered, it is therefore, ORDERED, ADJUDGED AND DECREED that said Motion is hereby in all things GRANTED, and that:

___X___ All allegations contained in the information/probation revocation matter in this cause are hereby dismissed.

_____ Count(s) _____ of the information in this cause is/are hereby dismissal.

ENTERED this the ___11___ day of ___October___ 20 1?

_____
PRESIDING JUDGE

FILED this 11th day of OCt 20 1?
4:10 P M
NINA S. SELLS
COUNTY CLERK CALDWELL COUNTY, TEXAS
By_____ Deputy

-3-

2

**Attachment 2.**  denial letter by TX Attorney General Office to District Attorney of Caldwell County,

TTTX



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

May 5, 2015

Ms. Jordan M. Powell
Assistant District Attorney
County of Caldwell
Caldwell County Criminal District Attorney's Office
1703 South Colorado Street, Box 5
Lockhart, Texas 78644

OR2015-08739

Dear Ms. Powell:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 562598 (Reference No. 2015-0071).

The Caldwell County District Attorney's Office (the "district attorney's office") received a request for (1) all documents contained in two specified criminal cases, (2) any documents showing or alleging the requestor owes money, and (3) any criminal records involving the requestor for a specified time period.[1] You state you do not have information responsive to a portion of the request.[2] You claim the submitted information is excepted from disclosure under sections 552.101, 552.108, and 552.111 of the Government Code. We have

---

[1] You note the district attorney's office sought and received clarification of the request. *See* Gov't Code § 552.222(b) (providing that if request for information is unclear, governmental body may ask requestor to clarify the request); *see also City of Dallas v. Abbott*, 304 S.W.3d 380, 387 (Tex. 2010) (holding that when a governmental entity, acting in good faith, requests clarification or narrowing of an unclear or overbroad request for public information, the ten-day period to request an attorney general ruling is measured from the date the request is clarified or narrowed).

[2] The Act does not require a governmental body to release information that did not exist when a request for information was received or to prepare new information in response to a request. *See Econ. Opportunities Dev. Corp. v. Bustamante*, 562 S.W.2d 266, 267-68 (Tex. Civ. App.—San Antonio 1978, writ dism'd); Open Records Decision Nos. 605 at 2 (1992), 452 at 3 (1986), 362 at 2 (1983).

Post Office Box 12548, Austin, Texas 78711-2548 • (512) 463-2100 • www.texasattorneygeneral.gov

## State Commission on Judicial Conduct

**Officers**
Jorge C. Rangel, Chair
Tom Cunningham, Vice Chair
Janette Shepard, Secretary

**Members**
Sid Harle
Karry K. Matson
Patti H. Johnson
Joel P. Baker
Edward J. Spillane, III
Steven L. Seider
Martha M. Hernandez
Diane DeLaTorre Threadgill
M. Sue Kurita



February 28, 2011

**Executive Director**
Seana Willing

**CONFIDENTIAL**

Frederick Wiegand
230 Weigand Road
Lockhart TX  78644

Re: CJC No. 11-0474-CO

Dear Mr. Wiegand:

The disciplinary system of the State Commission on Judicial Conduct serves many purposes: to protect the public; to promote public confidence in the integrity, independence, and impartiality of the Texas judiciary; and to encourage judges in Texas to maintain high standards of conduct both on and off the bench.  One of the most important ways the Commission accomplishes this mission is through its investigation of allegations of judicial misconduct.

Judicial misconduct involves the willful or persistent violation of the provisions contained in Article V, Section 1-a(6)A of the Texas Constitution, Texas penal statutes, or the Texas Code of Judicial Conduct by a person holding judicial office, or otherwise authorized to perform judicial functions, at the time of the alleged offense.  If a judge has violated these rules, the Commission has the discretion to discipline the judge through an admonition, warning, reprimand, or requirement for additional education, issued publicly or privately.  In severe cases, the Commission may initiate formal proceedings in order to publicly censure the judge or to recommend the removal of the judge from office.  Not every transgression will result in disciplinary action.

Some allegations, even if true, do not rise to the level of judicial misconduct.  For example, as a general rule, complaints about a judge's rulings (e.g., decisions relating to the introduction or exclusion of testimony or evidence at trial, bond setting, the issuance of arrest or search warrants, contempt of court proceedings, ex *parte* emergency relief, *habeas corpus* writs, temporary orders relating to custody, visitation, or child support, etc.) are not subject to review by the Commission, which has no authority to intervene in a court case or change a judge's rulings.  Since the Commission cannot act as an appellate court, complaints relating to a judge's discretionary rulings will, in most cases, be dismissed for failure to allege judicial misconduct.

P O Box 12265
Austin TX  78711-2265

www.scjc.state.tx.us

(512) 463-5533
Toll-Free (877) 228-5750

**Attachment 3**. First page of PowerPoint presentation to Caldwell County, TX commissioners court

# County Road 220, Caldwell County, Texas in the Year 2009 A.D.

- The written **history of Texas** begins in 1519, when Alonso Álvarez de Pineda explored the northern Texas & Louisiana Gulf Coast.

10/27/2015                    Fred Wiegand, Licensed                    1
                          Professional Engineer, Texas

( PowerPoint format not accepted in lower courts nor in Appellate Court )

**Attachment 4**.  Map hand-drawn by Appellee Fredrica Wiegand Carpenter Kinnard, showing public road CR 220 and the East Main Wiegand Gate, the disputed part of Caldwell County Road 220, and the Wiegand 2d Gate on abandoned Caldwell County Road 220, and evidence that Appellee claimed ownership of abandoned CR 220.



**Attachment 5.**  Map of County Road 220 by surveyor Jerry Hinkle



map by Hinkle shows Fredrica Kinnard's illegal blocking fence running across County Road 220 at an angle, blocking Wiegand main gate #1, and trespassing (crossing onto ) on North side of  Wiegand's boundaryline landowner's line separating Francis Berry Abstract League on North, from Esther Berry Abstract League on South side of County Road 220, and claiming ownership of the two Wiegand concrete bridges by virtue of a Total Station EDM GPS survey by Dan Gibson.



**Attachment 6**.  Photo by Appellant Frederick Wiegand Jr. shows remaining part of sister Fredrica Kinnard's illegal blocking fence cutting at an angle, across of County Road 220, through and blocking Wiegand's main gate #1 and trespassing on North side of Wiegand's boundaryline landowner's line separating Francis Berry Abstract League on North, from Esther Berry Abstract League on South side of County Road 220.

 **Attachment 7**.  As viewed from the SouthWest towards the NorthEast, this photo by Appellant Frederick Wiegand Jr. shows the remaining part of sister Appellee Fredrica Kinnard's illegal blocking fence cutting at an angle, across County Road 220, through and blocking Wiegand's main gate #1 and trespassing on North side of Wiegand's boundaryline landowner's line separating Francis Berry Abstract League on North, from Esther Berry Abstract League on South side of County Road 220.



ACCEPTED
07-15-00406-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
10/29/2015 11:47:04 AM
Vivian Long, Clerk

## APPELLATE CASE  07 15 00406 CV
### 29 October 2015 9:30 am Thursday 10 pgs

**3rd MOTION TO EXTEND TIME TO FILE COMPLETED BRIEF  FOR APPELLATE  CASE  NO  07 - 15 - 00406 CV**

NOW  IN THE 7TH  COURT OF CIVIL APPEALS

CITY OF  AMARILLO

COUNTY OF  POTTER

STATE  OF  TEXAS

FREDERICK  WIEGAND  JR., APPELLANT

V.

FREDRICA  WIEGAND  KINNARD,  ET AL, APPELLEES

Original  proceeding  from  the  421st  and 22d  state  district courts  in the city of Lockhart, county of Caldwell, state of Texas

The Honorable R. Bruce  Boyer,  presiding 22d Court

The Honorable Todd Blormerth, presiding 421st Court

APPELLANT'S  3rd  MOTION TO EXTEND TIME FOR FILING COMPLETED BRIEF

Frederick  Wiegand Jr., Pro  Se  Litigant
US Post Office Box  420461
1300 Matamoros St.
Laredo, TX  78042

fredww2000@yahoo.com
Telephone 512 938 7045

Page 1 of 10

14.   APPENDIX . . . . . . . . . . . . . . . . . . . . . . . Page 56 of 56